```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

EARL DUET                                         CIVIL ACTION

VERSUS                                            NO: 06-1825

CROSBY TUGS, ET AL.                               SECTION: R(4)

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment by defendants Crosby Tuggs, LLC, Global Industries, Ltd., and Global Offshore, LLC.  For the following reasons, the Court GRANTS the motion.

**I.   Background**

This suit arises out of the alleged heart attack suffered by plaintiff Earl Duet on or about September 3, 2005 while he was working as captain of the M/V CROSBY CRUSADER, a vessel owned by defendant Crosby Tugs, LLC.  Duet was working as a relief captain for the CROSBY CRUSADER on August 30, 2005.  The next day, Captain Ervin Guidry decided to leave his post on the CROSBY

CRUSADER to return home due to Hurricane Katrina.  Guidry spoke with Duet and secured his permission to leave.  After Guidry left, Duet was the only licensed captain aboard the vessel until he was relieved at 8 a.m. on September 3, 2005.  At the time, the vessel was "standing by" at the Port of Chaguaramas, near Trinidad, awaiting instructions from Crosby.  Duet asserts that due to the circumstances at the mouth of Chaguaramas, the vessel could not be anchored.  Defendants dispute this.

    Duet claims that since there was no other captain, he did not really sleep during this three-day period, but "passed out" occasionally for periods of time on a sofa.  Duet maintains that he had to stay awake to avoid collisions with other vessels.  Duet allowed other crew members to "watch the wheel" of the vessel when he felt the need to lie down and rest on the sofa.  Duet claims that he repeatedly told all defendants that he was having difficulty piloting the vessel alone.  Defendants, however, claim that Duet never specifically contacted them to request assistance in piloting the vessel.  Duet alleges that on September 3, 2005, at around 7 a.m., he called Baerum, the person in Trinidad responsible for coordinating Crosby employees, and told him that he was suffering severe chest pains and vomiting.  Duet was relieved around 8 a.m. and sought medical care.  He was diagnosed as having had a heart attack.  Duet continues to suffer

heart problems and claims he is chronically disabled.

On April 7, 2006 Duet sued his employer, Crosby Tugs, LLC, as well as Global Industries, Ltd., Global Industries Offshore, LLC, BP Energy Company, and BP Offshore Pipelines, Inc. under the Jones Act and general maritime law.  At the time of plaintiff's injury, Global Industries, Global Industries Offshore, BP Energy, and BP Offshore Pipelines were working with Crosby in Trinidad on a pipe-laying project.  Plaintiff claims that defendants (1) failed to provide a safe place to work, including an adequate crew, (2) required plaintiff to work excessive hours which resulted in dangerous levels of stress ultimately culminating in a permanently disabling heart attack, (3) operated the CRUSADER with illegal Coast Guard violations including lack of a relief captain, (4) failed to provide plaintiff with a safe place to work, including a sufficient dock area for the vessel and barge that was in its tow, (5) ignored plaintiff's requests for assistance in piloting the CRUSADER and failed to provide assistance in piloting the CRUSADER, (6) failed to take any steps to remedy a known illegal condition of one captain aboard the CRUSADER for a period of several consecutive days, and (7) failed to provide plaintiff with adequate cure immediately following his heart attack including specifically denying him intensive care treatment in Trinidad.  On June 17, 2008, defendants Global

Industries, Global Industries Offshore, and Crosby Tugs brought this Motion for Partial Summary Judgment with regard to all of plaintiff's claims except those for maintenance and cure.

**II.  Legal Standard**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at

325; *Lavespere,* 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

**III. Discussion**

Congress did not specifically enumerate the rights of seamen in the Jones Act, but it "extended to them the same rights granted to railway employees" by the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51. *See* 46 U.S.C. § 30104; *Terrebone v. K-Seat Transp. Corp.*, 477 F.3d 271, 280 (5th Cir. 2007) (quoting *Withhart v. Otto Candies, LLC,* 431 F.3d 840, 843 (5th Cir. 2005)). Under FELA, employers are liable to employees for "such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 42 U.S.C. § 51. Congress enacted FELA as a reaction to the "physical dangers of railroading that resulted in the death or maiming of thousands of workers every year." *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994). While FELA is to

be liberally construed, the basis of liability is negligence, not the fact that injuries occur.  *Id.* at 543.

### A.   Physical Injury

The primary issue is whether plaintiff's injury is a physical one or an emotional one with physical manifestations. If plaintiff's injury is emotional, then plaintiff's recovery is limited by the Supreme Court's decision in *Gottshall, supra.* There, the Supreme Court held that recovery under FELA for negligent infliction of emotional distress is limited to emotional injuries suffered while the employee is in the "zone of danger." *Gottshall*, 512 U.S. at 554. Plaintiff has not brought a claim for negligent infliction of emotional distress.  Plaintiff claims that he suffered a physical injury resulting directly from defendants' negligence in leaving him as sole captain of the CRUSADER for three days.  Defendants, however, assert that plaintiff has essentially brought a negligent infliction of emotional distress claim.  Defendants aver that plaintiff suffered a physical manifestation of an emotional injury and thus is precluded from recovery under *Gottshall*.

A number of courts have found that claims for negligent infliction of emotional distress disguised as claims for physical injuries are controlled by the *Gottshall* zone of danger test.

*Szymanski v. Columbia Trans. Co.*, 154 F.3d 591, 594 (6th Cir. 1998) (finding that plaintiff's claim that his heart attack was a physical injury "confuses the 'physical impact' that is a prerequisite for liability . . . with any physical manifestations of an emotional injury that may have occurred"); Capriotti *v. Consolidated Rail Corp.*, 878 F. Supp. 429, 433 (N.D.N.Y. 1995) (finding that since the substance of plaintiff's claim was that he was overworked, *Gottshall* controlled); *Dennis v. Consolidated Rail Corp.*, 1994 WL 494453 at *13 (E.D. Pa. 1994) ("The court seriously doubts . . . that the distinction between non-actionable claims of too much work and actionable claims of too dangerous work should turn upon the labels attached to such claims rather than the substance of those claims."). Thus, although plaintiff alleges that he suffered a physical injury, the court must look to the "substance of [plaintiff's] injury and the nature of [defendants'] conduct" to determine whether plaintiff must comply with *Gottshall*. *Smith v. Union Pac. R.R. Co.*, 236 F.3d 1168, 1171 (10th Cir. 2000).

As emotional injuries often result in physical changes, the difference between a physical injury and an emotional one may be difficult to ascertain. *Union Pac.*, 236 F.3d at 1171. Heart attacks affect a person physically, but they may be the result of

stress, over-work, an abusive work environment, or other emotional injuries. In cases involving recovery under FELA or the Jones Act, courts have split as to whether plaintiffs can recover for heart attacks. The split appears to center on whether the alleged cause of the heart attack was a characteristic of the work environment that exerted physical stress on the plaintiff.

Some courts have allowed recovery for heart attacks due to physical stress of some sort. *See Smith v. Ithaca*, 612 F.2d 215, 220 (5th Cir. 1980) (upholding a district court finding that a heart attack caused by benzene contamination aboard a ship was compensable under the Jones Act); *Harbin v. Burlington Northern R.R.*, 921 F.2d 129, 131-32 (7th Cir. 1990) (finding that summary judgment was inappropriate against a plaintiff who suffered a heart attack caused by extreme physical exertion in an area with poor air quality); *Connors v. Iquique, U.S.L.L.C.*, 2006 WL 1515601 (W.D. Wash. 2006) (denying summary judgment to defendant on plaintiff's claim that lifting a pump caused his heart attack). Most courts have found that heart attacks caused by non-physical stress are not compensable. *See Szymanski*, 154 F.3d at 593, 595 (holding that a plaintiff could not recover for a heart attack caused by overwork and the worker's pairing with an

abusive, incompetent gateman); *Capriotti,* 878 F. Supp. at 433 (holding that a railroad yardmaster could not recover for two heart attacks resulting from working long hours under stressful conditions). The courts that have allowed recovery for physical manifestations of non-physical stress decided their cases pre-*Gottshall. See Yawn v. Southern Ry.* Co., 591 F.2d 312, 315-16 (5th Cir. 1979) (suggesting, in dicta, that plaintiffs' claims of physical pain, mental anguish, and gastrointestinal disturbances caused by job stress stated a claim under FELA); *Pierce v. Southern Pac. Transp. Co.*, 823 F.2d 1366, 1372 n.2 (9th Cir. 1987) (upholding plaintiff's recovery of a heart attack caused by stress from employer's false accusation).

Thus the viability of plaintiff's claims turns on whether the stress that allegedly led to his injury is a form of physical stress. The record reflects that the stress which allegedly caused plaintiff's injury is less akin to a specific, physical stressor in the workplace, like benzene contamination or poor air quality, and more akin to non-physical stress such as overwork and anxiety. Although a case of total sleep deprivation might blur the line between what constitutes physical versus non-physical stress, the record reflects that Captain Duet did not suffer from total sleep deprivation for the three days he piloted

the ship. The testimony provided by plaintiff indicates that Captain Duet did sleep during the three-day period. In his deposition, Daniel LeBouef testified that he steered the boat, while Captain Duet slept on the couch, for times as long as six hours. (R. Doc. 120-2, 25:3-10). LeBouef further testified that not only did Captain Duet sleep on the couch, but he also left the wheelhouse on occasion to go to his bed for as long as four hours. (R. Doc. 120-2, 25:11-22). And while Captain Duet would not characterize his resting periods as sleep, he did concede that he "passed out" at times on the sofa during the three-day period. Although he said "sometimes it wasn't very long" (R. Doc. 120-1, 132:24), he also said that he would stay up as long as he could, which indicates that there came a time when he got some sleep. (R. Doc. 120-1, 138:7-8). As such, the record shows that plaintiff did not suffer from total sleep deprivation, but did suffer from overwork. The Supreme Court has stressed that FELA does not compensate for "stress arising in the ordinary course of employment," and that FELA will not compensate an employee whose complaint is that he "had been given too much-not too dangerous-work." *Gottshall*, 512 U.S. at 558. Here, plaintiff's injury stems from stress and overwork rather than any "physical impact." *See Szymanski*, 154 F.3d at 594. As such, the Court finds that *Gottshall* applies since plaintiff's claim is

essentially one for negligent infliction of emotional distress.

### B. Zone of Danger

Plaintiff argues that even if *Gottshall* applies, he suffered his injuries while in a "zone of danger" and thus can recover. The zone of danger test limits recovery for emotional injury to those plaintiffs whose psychic injury occurred while they were in *immediate* risk of physical harm by defendant's negligent conduct. *Id.* at 548. Thus those within the zone of danger of *physical impact* can recover for fright. *Id.*

Plaintiff claims that operating his tug at the mouth of Chaguaramas for three days placed him in the "zone of danger," since ships were passing in and out of the port, and plaintiff had to avoid such vessels. The Court does not find this persuasive. This Court has previously recognized that to recover under the zone of danger doctrine, plaintiff must have feared that his life or person was endangered. *Williams v. Treasure Chest Casino*, 1998 WL 42586 at *7 (E.D. La. 1998). Here, plaintiff never alleges that he was in immediate danger of crashing into another vessel. He never states that he felt frightened of oncoming vessels. The ship was "standing by," awaiting orders from Crosby. Duet described some of the period

of "standing by" as "[d]rifting around, riding around. Staying out of people's way. Trying not to get frigging ran over. Trying not to run over other people." (R. Doc. 119-2 at 8). Plaintiff's vague allegations that he had to avoid other boats in the port describes the typical work of a boat captain and are insufficient to raise an issue of fact that he faced an immediate risk of physical harm or impact. As such, the Court finds that plaintiff has not satisfied the *Gottshall* test for his negligence claim under the Jones Act. Accordingly, the Court GRANTS defendants' motion for summary judgment as to plaintiff's negligence claim.

### C. Unseaworthiness

Jones Act negligence and unseaworthiness are two distinct causes of action, each involving separate standards of proof, causation, and review. *Bonefont v. Valdez Tankships*, 136 F.3d 137 (5th Cir. 1998). The Supreme Court's ruling in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 36 (1990), however, limits the damages available in general maritime claims to those that would otherwise be available under the Jones Act or the Death on the High Seas Act (DOHSA). *See Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1506 (5th Cir. 1995). The Fifth Circuit has explained that if a "situation is covered by a statute like the Jones Act

or DOHSA, and the statute informs and limits the available damages, the statute directs and delimits the recovery available under the general maritime law as well." *Id*.

Since the Jones Act limits recovery of damages in intentional infliction of emotional distress cases to situations whether the plaintiff was in the "zone of danger," recovery in those cases is limited under general maritime law as well. *See also Szymanski*, 154 F.3d at 595. As such, defendants are also entitled to summary judgment on their unseaworthiness claim.

## IV. Conclusion

Accordingly, the Court GRANTS defendants' motion for partial summary judgment.

New Orleans, Louisiana, this 20th day of October, 2008

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE